UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MELISSA T. HUYNH                          CIVIL ACTION

VERSUS                                    NO: 09-5446

BOURBON NITE-LIFE, LLC                    SECTION: J(3)

## ORDER AND REASONS

Before the Court is Defendant's **Motion for Summary Judgment (Rec. Doc. 26)** and supporting memoranda, as well as Plaintiff's **Response Memorandum in Opposition (Rec. Doc. 39)** and her response to Defendant's reply memorandum.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

Plaintiff, a female of Vietnamese descent, began working at Razzoo's Bar & Patio ("Razzoo's"), located on Bourbon Street in New Orleans, Louisiana, as a waitress and "shotgirl" in January of 2007. During her employment at Razzoo's, Plaintiff alleges that she was: 1) discriminated against because of her race; 2) sexually harassed; 3) forced to work in a hostile work environment; and 4) retaliated against for complaining of these acts. Specifically, Plaintiff alleges that her supervisors, Angie Faust, James Krummel, Matt Hindeman, and Kyle (LNU), as well as her co-workers, frequently referred to her as "chink," "chinkerbell," and "shotsitute." She also alleges that her co-workers often smacked her on her buttocks, and on one occasion, Victor Pastor, a bartender/manager/security guard, smacked her so

hard that she could not stop crying and had to leave work. Plaintiff further alleges that as part of her job duties, she was forced to imitate sexual acts while giving shots to customers from "shot tubes." According to Plaintiff, if she did not give shots in this manner, she was not able to advance to the beer tub position, which was considered a promotion. Also, Plaintiff claims that Razzoo's had a policy, known as "BINGO." At the end of shifts, if an employee's cash register balanced perfectly ("BINGO"), that employee was required to flash his or her co-workers.[1]

    Plaintiff alleges that this harassment continued until May 25, 2007. On that date, Plaintiff got into a verbal altercation with her co-worker, Alicia Near. During the altercation, Near threatened Plaintiff and became belligerent. Near's anger and aggression escalated to the point where Faust fired her and asked her to leave the premises immediately. However, before exiting, Near attacked Plaintiff–striking her several times. Plaintiff allegedly suffered damages to her hands, back, neck, and arms, and was diagnosed with a concussion and other injuries. Plaintiff alleges that after this altercation, she contacted Razzoo's on a number of occasions to inquire about worker's compensation. However, according to Plaintiff, the employees who

---

[1] Plaintiff stated that although her register balanced perfectly at times, she refused to be part of "BINGO" and never flashed her co-workers.

answered the phone refused to answer her questions. Plaintiff further alleges that she believes she was fired for making these inquiries.

Defendant alleges that Faust called Plaintiff on three occasions, and left her three voice messages to find out her condition and to ascertain whether she would be coming back to work. Defendant alleges that Plaintiff never returned these phone calls. Defendant also alleges that Plaintiff was never fired, but instead, Faust simply filled out a "separation notice," because Plaintiff was a "no call/no show."

Plaintiff has filed the current suit with this Court in which she seeks damages for the aforementioned allegations under 42 U.S.C. §§ 1981, 1983, 1985, 1988, and 2000e, et seq., as well as Louisiana Revised Statutes 23:1361 and 23:301.

## THE PARTIES' ARGUMENTS

Defendant argues that it is entitled to summary judgment because 1) Bourbon Nite-Life, LLC ("BNL") is not a proper defendant; 2) Plaintiff's claims have already been visited and decided by the Equal Employment Opportunity Commission ("EEOC") and the EEOC could not conclude that Defendant violated any statutes; 3) Plaintiff's § 1981 claim should fail because Plaintiff has alleged discrimination on the basis of ethnicity, national origin, and sexual origin, none of which are covered under § 1981; 4) Plaintiff has failed to establish a prima facie

3

case of discrimination in relation to her national origin discrimination claims nor can she meet her burden of proving that she was terminated for discriminatory reasons; 5) Plaintiff cannot prove intentional discrimination or that she worked in a hostile environment because of her race or sex and therefore, these claims, as well as the conspiracy claims, must fail; 6) Plaintiff did not suffer any adverse action, and therefore, cannot allege that Defendant retaliated against her; and 7) Defendant cannot be held liable for the actions of its employees.

Plaintiff, on the other hand, argues that BNL is a proper defendant because it is listed as Plaintiff's employer on multiple documents. Plaintiff further argues that the EEOC's findings should not be given special weight and that this Court must review Plaintiff's claims *de novo*. Finally, Plaintiff argues that there are genuine issues of material fact that preclude this Court from granting summary judgment in favor of Defendant on any of Plaintiff's claims.

## DISCUSSION

### 1. Findings of the EEOC

Defendant argues that Plaintiff's claims should be dismissed on summary judgment because the claims have already been visited and decided by the EEOC and the EEOC was not able to conclude that Defendant violated any statutes. However, as stated in Smith v. Universal Services, Inc., 454 F.2d 154, 157 (5th Cir.

1972), the litigation at the district court level "clearly takes on the character of a trial de novo, completely separate from the actions of the EEOC." Id. This is not to say that the EEOC report is inadmissible. Id. The report is simply not binding on the Court and is to be given no more weight than any other testimony given at trial. Id. As a result, Defendant is incorrect in asserting that this Court should dismiss Plaintiff's claims simply because the EEOC did not rule in Plaintiff's favor.

2. **Summary Judgment Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citing Fed. R. Civ. Proc. 56(c)). The moving party bears the initial burden of demonstrating to the court that there is an absence of genuine factual issues. Id. Once the moving party meets that burden, the non-moving party must go beyond the pleadings and designate facts showing that there is a genuine issue of material fact in dispute. Id. "A factual dispute is 'genuine' where a reasonable jury could return a verdict for the non-moving party. If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue

5

for trial and summary judgment is proper." Weber v. Roadway Exp., Inc., 199 F.3d 270, 272 (5th Cir. 2000) (citations omitted). The non-moving party's burden "is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. [The courts] resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *[The courts] do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*" Little, 37 F.3d 1075 (*emphasis* in original)(citations omitted).

    A.    *Race and National Origin Discrimination Claims*

Defendant alleges that Plaintiff has failed to establish a prima facie case of discrimination. A plaintiff can establish a prima facie case of discrimination if she proves that 1) she was a member of a protected class; 2) she was qualified for a particular position; 3) she suffered an adverse employment action; and 4) the position was filled by a person outside of the plaintiff's protected class. Turner v. Baylor Richardson Medical Center, 476 F.3d 337, 345 (5th Cir. 2007). However, if the defendant articulates a legitimate, non-discriminatory reason for the adverse employment action (which BNL has done in this matter), the burden shifts back to Plaintiff to present

substantial evidence that the employer's reason was pretext for discrimination. Id.

Plaintiff first alleges that she suffered an adverse employment action when she was denied shifts as a beer tub girl because of her race. However, the evidence in this matter does not indicate that she was denied these shifts because of her race. Plaintiff testified that she was promoted to the beer tub position and enjoyed consistent shifts there until she took a month off from work.[2] When Plaintiff returned to work, her beer tub shifts had been assigned to other employees. Plaintiff was never told that she would not be returned to the beer tub position. She was only told that it may be a while before they could work her back into the rotation. Plaintiff's month-long absence from work is a legitimate, non-discriminatory reason for her lack of beer tub shifts upon her return to work. Plaintiff's only evidence that Defendant discriminated against her by not returning her to the beer tub shifts is her testimony that her co-workers used derogatory terms towards her. This testimony is insufficient to satisfy her burden of proving that Defendant's reasons were pretext for discrimination.

Likewise, Plaintiff has failed to prove that her race or

---

[2]Plaintiff took a vacation for a week. While on that vacation, she injured her wrist and was not able to perform her work duties or attend work until approximately one month after she took off from work.

7

national origin was the motivating factor when Defendant allegedly terminated her. Plaintiff does not allege that she attempted to return to work after the May 25, 2007 incident. Rather, she testified she was terminated because on numerous occasions after the incident, she attempted to ascertain information on worker's compensation insurance. Defendant, on the other hand, alleges that Faust reached out to Plaintiff on at least three occasions after the incident in an attempt to find out when Plaintiff planned to return to work. Defendant also alleges that Faust left her voice messages which she ignored. Regardless of whether Defendant indeed attempted to reach out to Plaintiff, Plaintiff has not proved that she was fired for discriminatory reasons.[3] Again, merely proving that she was subject to name-calling is not enough to prove that she was terminated due to race or national origin discrimination. As a result, Plaintiff's race and national origin discrimination claims should be dismissed.

    B.    *Sexual Harassment Claims*

        1.    Quid Pro Quo

A plaintiff may demonstrate that she was the subject of quid

---

[3]Plaintiff's retaliation claims should be dismissed by summary judgment for this reason as well. Plaintiff cannot prove that she was terminated because she complained about prior harassment or discrimination. The facts indicate that her alleged termination primarily involved around the lack of communication between the parties after Plaintiff's altercation with Near.

8

pro quo sexual harassment under Title VII if she can prove that 1) she is a member of a protected group; 2) that she was subject to unwelcome sexual harassment; 3) the harassment was based upon sex; and 4) that acceptance or rejection of the harassment was an express implied condition to receipt of a benefit or the cause of a tangible job detriment. Collins v. Baptist Memorial Geriatric Center, 937 F.2d 190, 195-96 (5th Cir. 1991).

Assuming, *arguendo*, that Plaintiff can satisfy the first three factors of this test, she must still satisfy the fourth factor, which requires her to show that she suffered a "tangible employment action" that resulted from her acceptance or rejection of her supervisor's alleged sexual harassment. La Day v. Catalyst Technology, Inc., 302 F.3d 474, 481 (5th Cir. 2002). Plaintiff alleges that she was required to perform "what can only be considered 'sexual' acts on Defendant's customers" while giving shots. Plaintiff's Motion in Opposition (Rec. Doc. 39) pg. 20. According to Plaintiff, if she did not comply with these requirements, she would have lost the opportunity to serve as a beer tub girl.

There are two problems with Plaintiff's quid pro quo claims. First, Plaintiff has not cited, nor has this Court found, any quid pro quo claims where the allegations of sexual harassment are due to interactions with customers as opposed to interactions with the plaintiff's supervisor. Secondly, even if Plaintiff is

9

able to connect her interactions with the customers to her supervisors, she has failed to show the nexus between these actions and her removal from the beer tub position. As discussed above, Plaintiff lost her position as beer tub girl after being out of work for a month. This decision was not based on her acceptance, or rejection, of the alleged sexual harassment she endured while giving shots to Defendant's customers. Therefore, Plaintiff's quid pro quo claims should be dismissed. See La Day, 302 F.3d 472 (holding that plaintiff did not satisfy the quid pro quo claim because he failed to demonstrate the necessary causal nexus between the alleged harassment and the adverse action).

### 2. Hostile Work Environment

The requirements for establishing a hostile work environment claim under Title VII are similar to those required to establish a quid pro quo claim. In fact, the first three requirements (member of a protected group; subject to unwelcome sexual harassment; and harassment was based upon sex) are all the same. The fourth requirement differs. See Frapella-Crosb v. Horizon Health Care, 97 F.3d 803, 806 (5th Cir. 1996); see also Collins, 937 F.2d at 196 (stating with the exception of the fourth element, the prima facie case under quid pro quo is essentially the same as under hostile environment). In a hostile work environment claim, the fourth element requires the plaintiff to prove that the harassment was so pervasive or severe as to alter

her conditions of employment and create an abusive working environment. Frapella-Crosb, 97 F.3d at 806. The Plaintiff must also show that the employer knew or should have known of the harassment and failed to take prompt remedial action. Id.

Plaintiff alleges that she was constantly smacked on the buttocks by co-workers and that on one occasion, she was smacked so hard that she cried. Defendant does not dispute this allegation, but rather claims that this was an ongoing interaction between employees and that Plaintiff herself smacked other co-workers on occasion. It is clear that this was a sexually promiscuous environment in which to work. What is unclear is whether Plaintiff's participation in these activities were consensual or unwelcomed. It is also unclear whether management took prompt remedial actions to stop this behavior.

Defendant claims that remedial action was taken in the form of a notification to all employees that these types of activities must cease. However, Plaintiff claims that no such warning was given to employees. As a result, there exists a genuine issue of material fact regarding whether this activity was "unwelcomed behavior" and whether the Defendant promoted this behavior or took prompt remedial action to bring these acts to a hault. Accordingly, summary judgment should be denied on the issue of hostile work environment and on whether Defendant is liable for the actions of its employees on this issue.

C. *Proper Defendant*

Lastly, Defendant's argument that Plaintiff's claims should be dismissed on summary judgment because BNL is not the correct Defendant is frivolous. BNL is listed as Plaintiff's employer on numerous documents, including her paycheck. If BNL is not technically the correct Defendant, Plaintiff should be allowed to amend her complaint to identify the proper Defendant. There would be no prejudice to Defendant in this situation because Razzoo's is well aware of the allegations in this suit and has exerted ample time participating in the defense against these allegations.

## CONCLUSION

Based on the aforementioned discussion, **IT IS ORDERED** that Defendant's **Motion for Summary Judgment (Rec. Doc. 26)** is **GRANTED** as to all claims **except for Plaintiff's sexual harassment claims stemming from the alleged hostile work environment.**

Further, to alleviate any technical deficiencies, **IT IS ORDERED** that Plaintiff is **GRANTED 10 days** from the date of this order to amend her complaint to name Bourbon Enterprises, Inc. as a defendant in this matter.

New Orleans, Louisiana, this 15th day of July, 2010.

_____
United States District Judge